## McDaniel Unemployment Compensation Case.

Argued March 19, 1959. Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Sheldon Tabb*, with him *Edward Davis*, for claimant, appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Anne X. Alpern*, Attorney General, for Unemployment Compensation Board of Review, appellee.

*Abraham D. Shapiro*, with him *Nathan B. Feinstein*, and *Cohen, Shapiro and Cohen*, for employer, intervening appellee.

OPINION BY WOODSIDE, J., June 10, 1959:

This is an appeal by the claimant, Harry McDaniel, from the decision of the Unemployment Compensation Board of Review which disallowed compensation on the grounds that the claimant was not able to work and was not available for suitable work under section 401-(d) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937), 2897, as amended, 43 PS §801(d).

Section 401 of the Unemployment Compensation Law sets forth the qualifications required to secure compensation and provides, inter alia, "compensation shall be payable to any employe who is or becomes unemployed, and who—. . . (d) Is able to work and available for suitable work;".

The board concluded that the claimant was not available for work at the time he filed his application for benefits. Where, as here, the decision of the Unemployment Compensation Board of Review is against the party having the burden of proof, the question on appellate review is whether the board's findings of fact are consistent with each other and with its conclusions of law and order and can be sustained without a capricious disregard of competent evidence. *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 83 A. 2d 386 (1951); *Weiland Unemployment Compensation Case,* 167 Pa. Superior Ct. 554, 76 A. 2d 457 (1950); *Bako Unemployment Compensation Case,* 171 Pa. Superior Ct. 222, 90 A. 2d 309 (1952).

The evidence shows that the claimant was last employed as a fireman by the Crown Paper Board Company, Inc. He discontinued work on January 16, 1956, because his eyesight had failed to such an extent that he was unable to perform the duties of his regular work. He was under medical care until November 19, 1956, by which time he had become totally and per-

manently blind. On December 3, 1956, the claimant registered for work with the Bureau of Employment Security and filed an application for unemployment compensation. The bureau first held that the claimant was not eligible for compensation, then revised its determination and held he was eligible. Upon appeal, the referee denied compensation, and subsequently upon appeal to the board, it also denied compensation.

The claimant testified, eloquently, ". . . if you actually want to know my ability, you would have to ask a blind man. He can tell you more than a sighted man. When you see a man you see him blinded. You say that man is in darkness, but he is not in darkness. He just don't see. A man's mind sees, not his eyes. His eyes are only a window just to peer through. Me, I have to feel. So I see with my hands."

A witness for the claimant, Mr. Oristaglio, the employment counselor for the Pennsylvania Association for the Blind testified on April 11, 1957, that a person who goes blind gradually does not necessarily need rehabilitation in order to perform a job, and on June 7, 1957, testified that he had tested the claimant's ability on a "job training setting" and that "He done well here and without the shadow of a doubt there are other jobs he can do [without further rehabilitation]."

The claimant contends that the board has capriciously disregarded his own testimony as to his ability, and the evidence of Oristaglio.

The board, however, is not bound to accept the claimant's testimony as to his ability or availability for work, nor is it required to accept as correct the opinion of the claimant's witnesses. Its failure to do so is not necessarily a capricious disregard of the testimony.

In the present case the bureau records showed that on January 29, 1957, claimant in response to a "call-

in card" stated to a representative of the bureau that he was "totally disabled from accepting any kind of work."

On April 10, 1956, the claimant made application for total disability benefits under a group insurance policy, and furnished hospital records in connection therewith, which indicated that on November 19, 1956, the date of his last treatment at the Wills Eye Hospital, claimant was "totally incapacitated."

On January 14, 1957, the claimant made application for workmen's compensation, alleging total blindness as the basis for his claim for disability.

The testimony of Mr. Kesselman, an employment counselor for the Bureau of Employment Security, indicated that available jobs which claimant could perform would be "very rare," and that Kesselman would not send claimant to "any job unless I first told the employer about it and unless I communicated with the State Council for the Blind Placement agent to determine the physical capacity of the appellant, and also make a job analysis to determine whether that man could work."[1]

Claimant's own testimony could have raised some doubts in the minds of the board as to his actual availability for work. On the basis of the entire record we cannot say that the board has capriciously disregarded the competent evidence. See *D'Yantone Unemployment Compensation Case*, 159 Pa. Superior Ct. 15, 46 A. 2d 525 (1946); *Kuzmierski Unemployment Compensation Case*, 172 Pa. Superior Ct. 649, 93 A. 2d 878 (1953).

Decision affirmed.

[1] "I made application at the employment office for that type of work. I have also talked with—some of the fellows have talked to me about some 'jobs,' but they have not materialized, but I had planned on making application to the Miller Parlor Furniture. I haven't made the application."